The first case this morning is Swanigan v. City of Chicago. May it please the court, I'm Irene Dimkar, I represent Rashad Swanigan. I would start by discussing the hold, pass, court, call policy of the Chicago Police Department. The defendants, the defendant's city, does not deny that this policy is unconstitutional. They do not deny that it was challenged in previous cases, and in 1987 the city appeared before this court and said they have rescinded the policy, they're not doing it anymore. But that policy continued to exist in practice and existed in August of 2006. That policy was used in Rashad's case. Now there are three time periods that I've asked the court to look at, and these were determined by the district court decisions. There's the arrest at the Labe Bank parking lot. There's the three to four hour wait while nothing was happening until the hold was placed. And then there's the arrival of the detectives at about 7 o'clock and the placing of the hold and a detention for a total of about 51, 52 hours. These periods were defined by the district court. In the motion for summary judgment decision, the court said the arrest is only what happened in the parking lot. It's when arresting officers physically placed Rashad in custody. The court dismissed the claim against the detectives and the watch commanders, saying they didn't have any contact with Rashad until the police station. The court also said that the arresting officers had no responsibility for Swanigan's detention once they brought him to the police station. The detectives arrived at about 7 p.m. Rashad was taken to lockup for processing at about 7, 17 p.m. And at 7, 36, they placed the hold. There are no individual officers who are responsible for or claim responsibility for the three to four hour wait period from about 4, 4, 20 to about 7, 30 p.m. So I'm asking the court to look at, first of all, the rest period. And one thing we're not trying to do is we're not trying to fight at water. We're not, or the court's 2016 Tapley ruling. We acknowledge that the police can arrest for even a minor offense and can take a reasonable amount of time to process an arrestee. But this is different because what did the police officers arrest Rashad for? They arrest him for two non-moving traffic violations and an ordinance violation. There was never a finding that there was probable cause to arrest him for bank robbery, even though the arresting officers claimed that that's why they were arresting him. So when they arrested him for three minor violations, he should have been released within a short period of time, maybe minutes, by taking him to the desk sergeant because bail is preset by Supreme Court rule. He's entitled to an I bond with no cash, and he possibly might have had to post his driver's license. They knew, the arresting officers knew they did not have probable cause to arrest him for bank robbery. But Rashad was arrested with the officers knowing that a hold was going to be placed on him. They arrested him in anticipation of Rashad being investigated as a hard hit bandit. Why is this separate three hour period separately compensable? It's all one detention. I don't know why it would be separately compensable. Your client has already recovered for the unduly long detention. And so carving out a three hour time frame within an unduly long detention is separately compensable. I don't understand the legal theory behind that. Well, the court had ruled that the detectives and the watch commanders were responsible for the detention. The detention began when the detectives arrived because they were personally liable. You mean the detention pursuant to the policy, right? Or am I misunderstanding? It was a detention. We're saying it was pursuant to the policy. Well, I'm sorry, but the folks that you held individually responsible in the initial trial. Yes. Their actions took effect only after that three or four hour period, correct? Yes, starting at about seven o'clock when they arrived at the station. And isn't that your theory as to why the three to four hours has not yet been addressed? Yes, and the city does not argue that Rashad has been compensated for that period. They do not argue that at all in their brief. That's a period when nothing happened. They're arguing that there was processing going on, but there was no processing going on. The processing, the fingerprinting, the mug shots, it was all done after the detectives arrived. Nothing was done beforehand. All the officers did was write tickets. They could have taken Rashad to the desk sergeant for him to be released on an I-bond within minutes, but they didn't do that. So nothing happened during that period. It's a hiatus. And the jury was only instructed to look at the arrest at the late parking lot. That's the responsibility of the arresting officers as defined by the court. And then they were required to look at the detective's responsibility and the watch commander's responsibility, which started at 7 p.m. So there is a three-hour period where there's a hiatus and no individual defendants have been held responsible. But he's validly arrested at that point. He has been validly arrested at that point when he's taken for booking. The jury found that there was probable cause to arrest, so there's no false arrest claim left in the case. That's been decided conclusively against your client. So he's under arrest pursuant to valid probable cause according to the jury. And that initial three-hour period, which you call a hiatus, is just the duration of time that someone is awaiting booking. Whether or not there's this hold policy sitting out there really is irrelevant. Well, there was no processing going on during those three hours. It doesn't matter. It doesn't really matter. He's under arrest. He's validly under arrest. He can claim compensation for the extended duration of the arrest past the 48 hours that McLaughlin requires something to happen, take the arrestee before a magistrate and get a probable cause determination. That's the requirement. He's already been compensated for the delay. Why is this separate? And it's not even a separate three-hour period. It's just part of a single detention. Well, they have to have justification for holding him for those three hours. No, he's under arrest. He's validly under arrest pursuant to probable cause. The fact that it was two or three hours before something actually happened doesn't matter. He was under arrest for traffic violations, and it was mandatory that he be released under the preset bail. But that's a state or local law issue. What's the constitutional violation for three hours of sitting in jail waiting for something to happen pursuant to a valid arrest? Well, I don't think the city can say we were processing him when they weren't processing him. It doesn't matter what was happening. If he was under arrest pursuant to valid probable cause, there's no basis for a constitutional claim. The fact that under local rules or police department policy or local ordinances he might have been released quicker doesn't make any difference as far as a constitutional theory is concerned. Well, what he was compensated for was the period of time that the detectives became involved. He's been compensated for an unduly long detention, two hours past the 48, right? Well, I think that's one thing I wanted to discuss right now, is whether he was compensated for the whole 51, 52 hours, for which there was never a finding of probable cause to hold him for robbery. McLaughlin sets a 48-hour presumption, right? But doesn't it, and that has sort of in the lore become a kind of rule of thumb, but isn't the underlying principle a broader one that the police have a duty to act promptly and reasonably to get somebody before a judge when they've taken them into custody? And if they deliberately delay that, I thought that was the purpose and the underlying foundation for his claims against the detectives, right? That's right, that's right. I mean, it's not that he was held past 48 hours, it's that he was held past a reasonable time under the circumstances. Right, but what was read to the jury is that jury instructions were that they were, and I cited it in my brief, that he was caused to be detained for longer than 48 hours and you must determine the damages for that. He was held in custody longer than the time allowed for by law. So did the jury get the message there was nothing wrong with the detention, it was just a little bit too long? So what was the $60,000 for? Was it for the whole time or was it for the last three or four hours? Well, I think the answer is in the decision that we're appealing right now because when we contested the lineups, the district court said Rashad was in lawful custody and the arrest was lawful, so he could be enforced to be a filler and a target in lineups. But the district court was confusing its own rulings. The court had ruled that he was illegally detained, and now the court is saying in the decision that we are appealing that Rashad was in lawful custody at the police station. So unless the court thought that the only part that was unconstitutional, which I think you were getting to, Judge Hamilton, was the last three hours beyond the 48 hours. Now if that's the case, the plaintiff should be allowed to prove that the city is liable for the first 48 hours because he was being held on an unconstitutional hold-pass court call at that point. Ms. Dimkar, because this case was split the way it was, we were dealing with a very confusing situation, as you and the city's counsel recognize, I think. I tend to agree that there's nothing that can be done about the arrest at this point. I'd like to ask you briefly about your claim for injunctive relief. You've made strong arguments in your brief to the effect that Mr. Swannigan is at heightened risk. He's never going to have another routine traffic stop in Chicago, given the information that is available in the police files. Yet it's been ten years. Has there been any repeat episode? He has been stopped by the police, and he will be stopped by the police. He has been stopped by the police since then? Yes, and he also has become more of a hermit. He stays home because of fear of going out and being stopped. Well, let me just throw out, this is a crude approach to this problem, but the Bureau of Justice Statistics tells us that in an average year, an African-American man has about a 13 percent chance of being stopped in a routine traffic stop, speeding, something else. Over a ten-year period, at least by my rough calculations, and these are national figures, not Chicago-specific, but over a ten-year period, that means he's got something like a 75 percent chance of being stopped and being treated as a suspected armed robber. Is that relevant in our analysis? I think it is. I think that, and we don't know enough, it's hard to argue too, because we don't know enough what's in the police databases, but we suspect that what's in the police databases is something to the effect, if a police officer stops him, possibly armed and dangerous. Something like that's probably going to pop up. The police report, this clear clothes report, is not going to pop up. It's now been put into different databases, and that's the kind of thing that's going to be affecting him if he gets stopped. So if he gets stopped, he's going to be taken to the station, and then the whole cycle begins. So it's not just speculative. Has that happened since, what's happened in the traffic stops since then? He has not, the hold has not been applied to him. So why should we worry then? Well, I don't think when you look at an injunction, you're looking at what could happen prospectively, and it's not like at every period of time, just because there's been a delay in this period, we get to look at that period and say, well, nothing's happened so far, so it must be okay. I don't think the law works that way. Well, we've got the Lyons case, and we've got to have some reasonable probability here of a reasonable likelihood of repeat exposure to the unconstitutional policy you're attacking. And so I guess what's the strongest argument in favor of the immediacy of that danger to him requiring an injunction? Well, I think it has to be looked at in conjunction with the records that are pending, the clear close records, because the police records show that the crime was solved. That's what close means. Clear close means it's solved. Exceptional circumstances means, and this was all explained during depositions, that there's some outside force that kept us from prosecuting him. So what is, he has been labeled as a serial armed robber who goes around in disguise, pulls out guns at banks and restaurants. So I think in conjunction with that, he's got a problem going out, and it's the perspective of what could happen to him and what is likely to happen. Is there a reasonable likelihood? So I see that I'm using up my rebuttal time, so I'm going to sit down at this point and see you in a few minutes. Thank you, Counsel. Thank you. Mr. Hendricks. May it please the Court. On remand from this Court's decision on the previous appeal in this case, Swanigan filed an amended complaint purporting to allege three Monell claims. Today I plan to explain that the District Court correctly dismissed all three claims. I'll explain that the Court correctly dismissed two of them, the whole past court call policy claims, and the lineup policy claim, because the single recovery rule precludes Swanigan from recovering any damages on those claims, and he failed to allege facts establishing that he has standing to seek equitable relief on either claim. And I'll explain that the District Court correctly dismissed the remaining claim, the clear closed policy claim, because Swanigan failed to identify any constitutional injury that the policy caused, and he also failed to allege facts establishing that he has standing to seek equitable relief on that claim. Concerning the whole past court call policy claim, the jury in Swanigan's previous action awarded him $60,000 in damages for unlawful detention. The single recovery principle bars him from recovering any additional damages for that injury. Swanigan contends that the jury's verdict in the previous action gave him compensation for certain injuries he incurred as a result of the city's whole past court call policy. What indications do we have that the prior trial damage award included harm for the time he was held before the detectives who placed the hold that was the basis for the award came in and acted individually? Well, among other things, the McLaughlin case governs what law would apply in this case. So regardless of what was actually the jury instructions that actually took place... Well, no, actually the jury instructions matter here. What indications do we have in this record that the prior trial damage award against the detectives individually and the watch commanders included harm for delay before any of them were individually involved? The jury instructions were not specific on that, but the McLaughlin cause of action. I'm sorry. I know you want to talk about McLaughlin. I want to talk about the record. If there's nothing in the record, fine. Tell me that and then tell me about McLaughlin. Well, if I can find the jury instruction, that is the pertinent instruction. The jury instruction... Which one was it? I'm sorry. It's on page... It would be record 0704749, the 2007 action, and I think it's on page 34, which addresses exactly what the jury instruction was concerning those damages. But, of course, the instruction concerned the cause of action, which, as Justice Sykes specifically mentioned, includes compensation for the entire duration of the detention, not just specific parts of it. He was lawfully arrested. So how do you hold the detectives responsible for time he was, if he was, unreasonably detained without the police doing anything before they got involved? Well, at the police station, there were other officials who made the decision exactly whether or not he was processed during any particular period, whether... And were those individuals liable for the $60,000? They were defendants in the case, and if they were not, whether or not they were actually... The instruction wasn't specific enough to identify specific individuals with specific periods of time. That much is certainly true. But if there was a problem with that, a plaintiff needed to appeal that to this court and argue that in this court that there was an error in the case in the instructions. That didn't happen. If there was a problem, and I don't see that there was a problem, he was compensated for the entire unreasonable period that he was in custody. He received $60,000 for that, and regardless of what he might have done to seek additional compensation on the unlawful detention claim under McLaughlin, he had to do that in an appeal if he didn't like what the instructions were. And also, as far as I understand it, he didn't seek that relief. He didn't proffer a jury instruction that would have been specific enough to tease that out, which again was his fault on that claim. Who would have standing to seek an injunction against the hold-past-court-call policy? Describe who might have that standing. Well, I think it's very difficult for anybody to have standing on that claim. It's hard to envision anyone because it has to be likely that a person will be arrested. And from what I can tell from the case law, there's a presumption against assuming that police officers will unlawfully arrest anyone. So establishing the likelihood that someone would be arrested unlawfully is anathema, I think, to the case law. Certainly this record... Suppose the city police adopted a policy that said, we're going to arrest, sorry, we're going to stop, just do tarry stops of 10% of the men in Chicago every year. That's just without foundation. We're just going to do that as a way to keep control of the streets. So the chances that any one individual would face an unconstitutional stop in the coming year would only be 10%. Would anybody be able to seek an injunction against that policy? The policy is confusing to me, as you posit it. And the reason for that is that a tarry stop requires reasonable suspicion. Let's just do a stop without reasonable suspicion then. Random on the street, we're stopping 10% of people regardless of whether there's a... Well, of course, some of those people, there may be reasonable suspicion. So you're going below the 10%. How low below the 10% you'd go, I don't know. It would clearly be an unconstitutional policy, right? It would be an unconstitutional policy. That's part of the hypothesis. Would anybody have standing to seek an injunction against that? I'm not sure they would. And the reason for that is that there would be... We haven't established what percentage of the people, of the persons stopped, would be stopped without reasonable suspicion. Under your hypothetical, some would and some wouldn't. And depending on how low that is, even accumulating that over a number of years, might not make it likely that any particular person would be stopped. And so in that person, only a particular person who... Okay, you obviously don't like my hypothetical. So let's modify it a little bit until I can get an answer. Let's suppose the policy is we're going to just carry out... What's the male population of Chicago? A million and a half? Two million? Let's say two million. We're going to carry out 200,000 stops of those men without reasonable suspicion every year. No individual is more likely than not in the coming year to be stopped. But if you put a group of 100 men together in a case, the odds are very, very high that some of them would be. As I understand your hypothetical, which is that 200,000 people a year are stopped without reasonable suspicion, then of course it would not only be, I think, unconstitutional, but almost anyone would have a right to seek an injunction. Right. So why is Mr. Swanigan different given, with respect to the heightened risks he faces, in light of the records that plaintiff says exist about him? Because none of the statistics that he provides suggests that anybody was stopped wrongfully, that there was a likelihood that it was likely... His concern is not about the stop. It's about being detained further because of the clear, closed record about him with respect to this armed robbery. That's right. He doesn't allege facts that establish that it is likely he would even be stopped, much less likely that he would be arrested after being stopped, which is the pertinent measure for purposes of his first two claims. The clear, closed policy claim would, of course, be different. But with respect to that one, the question would be whether it would be likely he would be stopped. But again, he doesn't allege. None of the statistics he throws out, and none of the allegations in his complaint, indicates that it would be likely that he would be stopped without reasonable suspicion. That's not really the issue for him. The issue for him is that, as I said, over a 10-year period, any individual man might well be, let's say, certainly greater than 50, maybe greater than 75 or 80 percent chance of being stopped by police, quite lawfully. But for him, he's got this information about him that will make the police treat him differently. Well, there's no indication of that. And you tell us that there's no reason for him to worry because the police will look at that and see, oh, the prosecutor decided not to press charges, so he must be perfectly harmless. He doesn't allege that if the police were to stop him because they consult their computer in their squad car and learn about the clear, closed designation. That would be a routine practice, right? Well, he alleges that. As far as I understand it, the officers do not have access to the clear, closed designation, the case supplementary report of any individual from their squad car or from any handheld computer. Do we know what information pops up about him with that kind of a search? Well, that kind of a search could not be made on the street. As far as I understand it, the entire case supplementary report, if any portion of the information on the clear, closed supplementary report were available to the police, all of it would be available to the police as far as I understand it. But this sounds like just a factual uncertainty, right? Well, we don't know. So if you can't tell us what information is available to a police officer who stops Mr. Swanigan for speeding or for making an illegal right turn on a red or something, why don't we accept allegations to the effect that this information is available? Well, if he were stopped for an illegal right turn on a red, that would be probable cause not just to stop him. Officers would be entitled to stop him under those circumstances. There's no question about that. And arrest him. Great. Okay. But do they also treat him as an armed robber? That's the question. I'm not sure what the difference is in treating someone as an armed robber as opposed to... You don't think that makes a difference to a police officer who runs a background check once he gets the driver's license? Well, certainly they would be entitled to stop him from the right turn on the red, and they would be no less entitled to stop him if they learn that he's a robber. They would also be... You're missing the point. Maybe I'm not being clear about this. You said in your brief at page 40, we cannot fathom how the clear-closed report could harm plaintiff. Well... You can't? The clear-closed report... Think about somebody stopped by the police reaching for a wallet or a cell phone. There are certainly plenty of incidents like that in recent years where police have fired, right? Yes. You don't see a risk there? Well... When a police officer sees that this fellow shows up, if he does, as an armed robber. The information, of course, is not just that he's an armed robber. The information on the case summary report is that charges were not brought against him. That would be very comforting to the police officer, right? The prosecutor decided not to prosecute because the witnesses were a little shaky on their IDs, even though we all know he wasn't the guy who did it. Well, I think it would be a cautionary sign to a police officer that they must treat him carefully, both in terms of what he might be, namely a robber, but also in terms of what his civil liberties are because, after all, he was not charged with the offense that may come up. And, of course, it's good police practice to have records of prior investigations concerning the person. Absolutely. Absolutely. No disagreement there. But those records have consequences, is the point that I think Plaintiff is trying to make. I understand. I understand that. But, again, there's... And you seem to be denying them. No, I'm not denying it. I'm trying to... You said you can't fathom how those records could harm him. Right. I think that's right because my understanding is that they would know that the charges were not brought, and because they would know that the charges were not brought, they would know that stopping him without reasonable suspicion would be wrong, and if they had reasonable suspicion or even probable cause, that they would be entitled to arrest him. But that would be true of anyone. And the benefits of maintaining the case summary report in the records of the police department for access by police officers, at least at the station, which is what I understand is currently the policy, there are beneficial aspects of that policy as well. I see that my time is up. Thank you, Counsel. You have a minute. I'll give you another minute. We have two. I appreciate that. Thank you. Well, the Supreme Court said at Owen that the Monell claim was supposed to allow reform of unconstitutional policies and practices. So how do we get rid of the hold, pass, court, call policy? It's insidious. It's blatantly unconstitutional. The city agrees that it's unconstitutional, but we don't seem to have a way to get rid of it. And if you follow the city's argument, there should never be a Monell claim because you're going to get your compensation from the individuals. But what we wanted, one thing we wanted was to attack the hold, pass, court, call procedure. Counsel just said that the three to four hour wait until the hold was placed was compensated already. But that was not argued in their brief. They never said that. They never argued that it was compensated already. And, in fact, the jury instructions say that you cannot hold officers liable for what others did. So you could not hold the detectives and the watch commanders liable for whatever happened before they arrived on the scene. Regarding the clear close policy, we don't know what alerts are on the police computer. And we need a process to contest the police reports. And I know this is really a tough situation because you don't want someone being able to contest police records just because they want to or because they're found not guilty or whatever. But this was a man who went to a bank to cash a check. He was a construction worker. He didn't have a criminal record. And he needs a process to contest that there's clear close police records that indicate that he's a serial armed bank and restaurant robber. And it does affect him when he gets stopped. We don't know to what effect. But we know that he's going to be treated differently. And following the case law since Lyons, we have to show that there's a reasonable possibility that he's going to be affected again. And this is going to be a recurring event. The plaintiff has set forth legitimate Monell claims, and we ask the court to allow us to go forward. This was, once again, a motion to dismiss a complaint. We just want the opportunity to go forward with discovering this case. Thank you. Thank you, counsel. Thanks to both counsel. The case will be taken under advisement.